# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 20, 2011

No. 10-30916

Lyle W. Cayce
Clerk

BERK-COHEN ASSOCIATES, L.L.C.,

Plaintiff - Appellee

v.

LANDMARK AMERICAN INSURANCE COMPANY,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-9205

Before JONES, Chief Judge, and KING and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

This insurance case asks the court to determine the extent of coverage available following a calamitous 15 months, during which an apartment building was hit by a tornado, a hurricane, a fire, and an out-of-control vehicle. Interpreting the contract in question, we affirm the district court's calculation of lost business income but reverse its imposition of a statutory penalty for bad faith.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30916

## Background

Berk-Cohen Associates, L.L.C. ("Berk-Cohen") owns a number of properties, among them the Forest Isle apartment complex. Between August 2005 and October 2006, Forest Isle suffered damage from a tornado, Hurricane Katrina, a fire on the property, and a motorist's collision with a transformer that supplied power to the building. Berk-Cohen submitted claims to its insurer, Landmark American Insurance Company ("Landmark"), following each of these misfortunes. Landmark paid over $20 million to cover the cost of repairs and to compensate Berk-Cohen for lost business income.

The insurance policy in effect between Berk-Cohen and Landmark did not cover losses at Forest Isle "caused directly or indirectly by Flood." The policy did, however, extend to losses resulting from wind damage. In the case of a covered cause of loss (*e.g.*, wind damage), Landmark insured Berk-Cohen against both property damage and lost business income. According to the policy, the latter is a product of several factors, among them "[t]he likely Net Income of the business if no physical loss or damage had occurred . . . ." The policy then narrows the scope of lost business income by excluding "any Net Income that would likely have been earned as a result of . . . favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses." Invoking this restriction, Landmark refused Berk-Cohen's demand for additional lost income due to increased rents following Hurricane Katrina. Landmark reasoned that the increased rents resulted from flooding around New Orleans and that damage caused "directly or indirectly" by floods was excluded under the policy. As a result, Landmark declined to increase its calculation of lost business income to the extent that any foregone income arose from flooding.

Berk-Cohen responded with this lawsuit. Following a bench trial, the district court held that favorable business conditions attributable to flooding in other buildings were nevertheless appropriate considerations in computing the

2

No.  10-30916

business income that Berk-Cohen lost as a result of the wind damage to its own building.     Additionally,    the    district    court    found    that    Landmark's misinterpretation of its policy entitled Berk-Cohen to statutory damages and attorney's fees.  Landmark appeals.

## Discussion

This court reviews the district court's interpretation of an insurance policy *de novo*.  *Old Republic Ins. Co. v. Comprehensive Health Care Assoc.*, 2 F.3d 105, 107 (5th Cir. 1993).  The district court's interpretation of state law is likewise subject to *de novo* review, but we review the findings of fact during a bench trial for clear error.  *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006).

### A.  Calculation of Loss

The district court correctly held that the insurance policy between Berk-Cohen and Landmark permits recovery for lost business income due to the favorable business conditions in the wake of Hurricane Katrina.  Although flood-related damages to Forest Isle are themselves excluded, stimulated demand as a result of flood damage to other structures is a proper consideration in calculating lost income.

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code." *Huggins v. Gerry Lane Enters.*, 957 So.2d 127, 129 (La. 2007).  As such, each provision "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art. 2050.  Any ambiguity that remains after applying normal cannons of contract interpretation "is to be construed against the insurer and in favor of coverage." *Huggins*, 957 So.2d at 129.

At the heart of the present case is the contractual provision allowing Berk-Cohen to recover its lost business income.  Under the policy, lost income includes

3

No. 10-30916

"[t]he likely Net Income of the business if no physical loss or damage had occurred, *but not* any Net Income that would likely have been earned as a result of . . . favorable business conditions caused by the impact of the Covered Cause of Loss . . . ." (emphasis added). The "Covered Cause of Loss" in this case is wind. Consequently, Berk-Cohen may not recover for lost business income as a result of wind damage suffered by customers and competing businesses. On the other hand, any increase in customers' demand or reduction in competitors' supply due to flooding at other properties is a permissible factor in calculating lost business income.

Landmark would employ the policy's flood exclusion, which bars recovery for "damage caused directly or indirectly by Flood," to reach the opposite conclusion. But this reading extends the flood exclusion beyond its function. By its own terms, the flood exclusion applies to "all coverage parts" of the policy. If coverage is permissible—and Landmark does not deny that the policy covers wind damage—then the flood exclusion has nothing further to say, and the only remaining issue is calculation of damages. The policy expressly permits that calculation to consider favorable business conditions. We decline to use a limitation on coverage to alter the calculation of damages for a covered loss.

The district court's reading of the insurance policy harmonizes the two contested provisions—*i.e.*, coverage for lost business income and the flood exclusion—and honors the *Huggins* rule favoring broad coverage.

## B.  Statutory Penalties

Louisiana law authorizes penalties against an insurer that fails to pay claims within 30 days of a demand letter and written proof of loss, "when such failure is found to be arbitrary, capricious, or without probable cause . . . ." LA. REV. STAT. ANN. § 22:1892(B)(1) (2009). The penalty is "fifty percent of the difference between the amount paid or tendered and the amount found to be due

as well as reasonable attorney fees and costs."[1]  *Id.*  This is a penalty statute which, according to Louisiana law, must be "strictly construed." *La. Bag Co. v. Audubon Indem. Co.*, 999 So.2d 1104, 1120 (La. 2008).  The penalty does not apply "when there is a reasonable and legitimate question as to the extent and causation of a claim . . . ."  *Id.* at 1114.  In *Louisiana Bag*, the Louisiana Supreme Court assessed penalties against an insurer that refused to pay the uncontested portion of a claim and refused coverage for lost inventory.  On both issues, the court held that no reasonable uncertainty existed as to the insurer's obligation to pay, making its refusal arbitrary and without probable cause. *Id.* at 1116.

The present case is unlike *Louisiana Bag*.  The scope of the flood exclusion, with its reference to all damage "caused directly or indirectly" by flooding, is susceptible to different interpretations.  Landmark was therefore neither arbitrary nor capricious in refusing to compensate Berk-Cohen based on favorable business conditions arising from post-Katrina flooding.  Landmark also distanced itself from the insurer in *Louisiana Bag* by paying over $20 million on the undisputed portions of Berk-Cohen's claims.  *See French v. Allstate Indem. Co.*, 637 F.3d 571, 585 (5th Cir. 2011) (interpreting *Louisiana Bag* as creating a rule in favor of penalties when an insurer fails to pay the undisputed amount due).  Because this case is distinguishable from *Louisiana Bag*, we follow our long line of precedent refusing to assess statutory penalties where an insurer makes a good-faith error in interpreting its policy.  *Morey v. W. Am. Specialized Transp. Servs.*, 968 F.2d 494, 499 (5th Cir. 1992) ("This Court, however, has taken the position that an unfavorable judgment does not automatically subject

---

[1] An earlier version of the statute fixed damages at 25% of the unpaid amount and did not allow a plaintiff to recover attorney's fees.  LA. REV. STAT. ANN. § 22:658(B)(1) (2004). Landmark argues that the earlier version of the statute should control this case.  Because we find no bad faith in Landmark's interpretation of its policy, we need not reach the issue whether the earlier or later version of the statute applies.

No. 10-30916

an insurer to penalties under La.R.S. § 22:658."); *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1111 (5th Cir. 1991) ("Even though we disagree with the district court . . . , we conclude that [the insurer's] denial was nevertheless not 'arbitrary or capricious.'"); *Woods v. Dravo Basic Materials Co.*, 887 F.2d 618, 623 (5th Cir. 1989) ("[I]t is not apparent from the statute that the Louisiana legislature intended insurers to pay penalties whenever they err in their interpretation of coverage."). Following *Louisiana Bag*, this court has reaffirmed this view on similar facts. *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675 (5th Cir. 2011). Penalties were unwarranted in *Seacor* because the insurer "promptly paid . . . over $4 million to cover undisputed damages and looked to judicial assistance to resolve disputes that bore on [other policy provisions]." *Id.* at 685. The same pattern of payment followed by good-faith litigation has unfolded in this case. We therefore follow this court's precedent in refusing to impose penalties based on interpretive error alone.

Because Landmark was not arbitrary or lacking probable cause to believe that its contract with Berk-Cohen excluded lost income resulting from flooding in other buildings, the district court should not have assessed statutory penalties against Landmark.[2]

## Conclusion

The insurance policy between Berk-Cohen and Landmark excludes coverage for flood damages at the Forest Isle property. The flood exclusion does not, however, prevent Berk-Cohen from recovering lost business income due to the favorable business conditions arising from flood damage to other buildings.

---

[2] Landmark argues in its briefs that the district court erred in imposing pre-judgment interest on the penalties assessed. Because we hold that penalties are inappropriate in this case, the question of how to calculate interest on the same is moot. In all other respects, the district court's calculation of damages is correct.

6

No.  10-30916

On this issue, we AFFIRM the district court.  We REVERSE, however, on the assessment of statutory damages against Landmark.

**AFFIRMED IN PART AND REVERSED IN PART.**